**E. L. CORD, etc., Appellant,**

v.

**Calvin J. SMITH, Appellee.**

**No. 19416.**

United States Court of Appeals
Ninth Circuit.

Nov. 4, 1964.

518

Milo V. Olson, William K. Woodburn, Los Angeles, Cal., Edward D. Neuhoff, San Marino, Cal., for appellant.

Lyndol L. Young, Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Appellant Cord, the defendant in the trial court, appeals from the denial of a motion by which he sought, in substance, to disqualify Lyndol L. Young, attorney for plaintiff appellee Smith, from acting as Smith's attorney in the case. Jurisdiction of the action is based upon diversity of citizenship. The complaint alleges that Cord is indebted to Smith for money had and received in the sum of $3,000,000.00, and charges fraud, malice and oppression, asking exemplary damages in an additional sum of $3,000,-000.00. Cord answered, denying the material allegations of the complaint and alleging certain separate defenses.

Thereafter, Cord's deposition was commenced. It appeared from certain questions asked him that the claim stated in the complaint rests upon an agreement claimed to have been made between Cord and Smith sometime between 1932 and

1934, whereby Smith was to have managed certain radio stations then owned by a corporation of which Cord was the sole or principal stockholder, and any profit realized upon a sale of the stations was to be divided equally between Cord and Smith. It is claimed that the stations were sold in 1962, but that Cord did not honor the agreement. It further appears that the contract is claimed to have been made by Young, acting for Cord. When these facts appeared, Cord's counsel instructed Cord not to answer further questions on the ground that at the time of the transaction Young was Cord's attorney. Young then moved for an order holding Cord in contempt. Young had also served subpoenas duces tecum upon Cord.

Cord then filed the motion that gives rise to this appeal.[1] A hearing was held upon this motion, action upon the other matters being deferred. At the hearing, testimony and exhibits were received, the matter was argued and memoranda were filed by counsel. The court denied the motion, and Cord appealed. He also applied to one of the judges of this court for a stay. This was not granted because counsel agreed that no further action would be taken in the trial court until the motion for a stay could be presented to a panel of this court. Smith then filed a reply to the moving papers and a motion to dismiss the appeal on the ground that the order denying Cord's motion is not appealable. In response, while contending that the order is appealable, Cord also requested permission to file a petition for an appropriate writ in the event that we should be of the opinion that the order is not appealable.

At the hearing before this court, there was a further informal understanding with counsel that no further proceedings would be had in the trial court while the matter was pending before this court. Consequently, we did not issue the requested stay. We did agree to hear the matter on the merits, treating the appeal as being also a petition for any appropriate writ. The matter was heard on the merits on September 9, 1964. Because of the pendency of the proceedings here, the trial court had set over all matters pending there until September 21.

While the matter was under submission, and on September 14, Young advised the Chief Judge of this court by telephone that he proposed to withdraw as attorney for Smith in the trial court, and he sent the Chief Judge a telegram

---

1. In the moving papers, he requested the following:

"1. An order restraining and enjoining the plaintiff Calvin J. Smith from further prosecution or taking any further proceedings in the above-entitled action so long as Lyndol L. Young, Esq. is the attorney for Calvin J. Smith.

"2. An order disqualifying, restraining and enjoining Lyndol L. Young, Esq. from acting as attorney and representing plaintiff Calvin J. Smith in this action against defendant E. L. Cord.

"3. An order restraining and enjoining Lyndol L. Young from doing anything that will injuriously affect the interests of defendant E. L. Cord, with particular reference to all matters and things that occurred between September, 1931 and June 6, 1934.

"4. An order restraining and enjoining Lyndol L. Young from representing Calvin J. Smith, plaintiff in this action, with reference to matters arising out of the previous employment of Lyndol L. Young as attorney for defendant E. L. Cord, as to which matters Lyndol L. Young is now acting adversely to the interests of E. L. Cord, and defendant E. L. Cord does not consent thereto.

"5. An order restraining and enjoining plaintiff Calvin J. Smith from using any information in this action against defendant E. L. Cord which information Calvin J. Smith obtained and acquired through Lyndol L. Young and which information Lyndol L. Young acquired as a result of his former relationship as attorney for E. L. Cord.

"6. An order restraining and enjoining Lyndol L. Young from divulging any confidential and privileged information to plaintiff Calvin J. Smith which information was acquired by Lyndol L. Young while he was acting as attorney for E. L. Cord."

which is set out in the margin.[2] Upon our instruction, the clerk sent a copy of this telegram to counsel for Cord, asking for his comments. He replied under date of September 17, urging that such withdrawal would not render Cord's appeal or petition moot. This was followed by a telegram from Young to Cord's counsel, stating that on September 21, in the trial court, he would withdraw as attorney for Smith and would withdraw all pending motions and subpoenas. He also sent a telegram to the clerk of this court, requesting that Cord's attorney be advised that he should attend the hearing before the trial judge on September 21. We did not do so. (See footnote 2, supra.) Cord's counsel did not appear, on the theory that he had agreed with this court to take no further action in the trial court while the matter was under submission.

Young appeared, withdrew his motion to have Cord held in contempt, withdrew the subpoenas that had been issued, and withdrew a motion that he had made for attorney's fees in connection with a motion that had been filed by Cord's counsel for a protective order under Rule 30(b) F.R.Civ.P. He then asked the court for a trial date and the court set the matter down for trial on November 4, 1964. The following then occurred:

"THE COURT: This court feels that the matter before the Circuit Court is moot by reasons of your motions here and the telegrams.

"MR. YOUNG: All right.

"Now, therefore, I want the record to show that I now withdraw in this case in the District Court as attorney for Mr. Smith, but I want it to show that the case is pending before the District Court, because I do not withdraw and I do not intend to withdraw from the proceedings in the United States Circuit Court of Appeals as they continue to go on.

"THE COURT: That is right.

"MR. YOUNG: Because there may be a necessity for my further appearance up there on a motion to dismiss on the ground the matter is moot, or the court may set the matter down for further hearing. I don't know.

"THE COURT: The court will permit you to withdraw in this particular case and Mr. Murray to be the attorney of record. But if there are any further matters before the Circuit Court of Appeals, it is the understanding of this court that you will appear in those matters.

"MR. YOUNG: That is right. Very well.

"Then I will withdraw from the matter pending here before your Honor, as Mr. Smith's attorney, and Mr. Murray has already been associated as attorney some time ago in this proceeding here.

"THE COURT: Yes, he was here some time ago.

"MR. YOUNG: And Mr. Murray is now attorney of record. That is all."

Thereafter, Young filed a motion to dismiss the proceedings here as moot. The motion is opposed.[3] In view of the foregoing we have ordered all further proceedings in the trial court stayed until this court acts.

2. The telegram reads: "Confirming my telephone conversation with you this morning and based upon the assumption that all proceedings in the case of Cord versus Smith number 19416 will be moot and said proceeding therefore will be dismissed. You are advised that after conferring with my client Smith and because of his unhappiness over the delay that has occurred in this collateral matter I will withdraw as his attorney.—Lyndol L. Young." Counsel should know that one does not thus bargain with this or any court.

3. We have since been in receipt of correspondence from Young, followed by replies from Cord's counsel. Because Young's letters are intemperate and vituperative, adding heat but not light to the controversy, we ordered that no more communications from either side be sent to us.

There are thus before us the following matters:

a. Cord's appeal.

b. The motion to dismiss that appeal.

c. Cord's petition for an appropriate writ.

d. The motion to dismiss all proceedings as moot.

■ 1. *Are the proceedings moot?* We think not. Young is still continuing to act as attorney for Smith in this matter in this court. If he is disqualified in the court below he is equally disqualified here. Moreover, while Young has withdrawn as counsel of record in the court below, there is nothing to prevent his acting as Smith's attorney by way of consultation and advice outside the court. If he is disqualified, he should not be permitted to do so. There is also the possibility that he will later seek to appear again as Smith's attorney of record. If he does, the trial court may permit him to do so, having held that he is not disqualified. Young's attitude, both in the trial court and here, was not benign. It gives us little confidence that his withdrawal is complete for practical purposes, even though he is no longer counsel of record in the district court. Under these circumstances, we conclude that the matter is not moot.[4]

■ 2. *Is the order appealable?* We think not. It is true that the motion made in the trial court requests an order which appears on its face to be in the nature of an injunction, and the order of denial might be considered appealable under 28 U.S.C. § 1292(a). (Cf. Harmar Drive-In Theatre v. Warner Bros. Pictures, 2 Cir., 1956, 239 F.2d 555) The principal relief sought, however, is a ruling that Young is disqualified. In Fleischer v. Phillips, 2 Cir., 1959, 264 F.2d 515, it was held, Judge Moore dissenting, that an order denying a similar motion was not an appealable order. The court refused to follow Harmar. In Marco v. Dulles, 2 Cir., 1959, 268 F.2d 192, the court followed the Fleischer case, Judge Moore again dissenting. See also Willheim v. Murchison, 2 Cir., 1963, 312 F.2d 399. It was pointed out in those cases that no order under 28 U.S.C. § 1292(b) had been made. That is equally true here. We think that, particularly since the adoption of section 1292(b) the order is not appealable. It involves the supervisory power of the federal courts over attorneys appearing before them, rather than an injunction in the sense in which the term is used in section 1292(a). Of course, the principal purpose of section 1292(b) is to permit appeals, with the concurrence of the trial court and of the court of appeals, from interlocutory orders not appealable under section 1292(a). But the existence of this method of appeal also removes any incentive to enlarge by a liberal construction, the class of orders appealable under section 1292(a).

■■ 3. *May we treat the matter as a petition for a writ?* We have held that where a party attempts to appeal from an unappealable order, and the circumstances justify our doing so, we can, in our discretion, treat the proceedings as a petition under the All Writs Act, 28 U.S.C. § 1651. Hartley Pen Company v. United States District Court, 9 Cir., 1961, 287 F.2d 324; Olympic Refining Co. v. Carter, 9 Cir., 1964, 332 F.2d 260, 263–264. We think that we should exercise our discretion to so treat the matter in this case. Continued participation as an attorney, by one who is disqualified

---

4. While we have not found a case directly in point, and none has been cited to us, we think that the following cases support our conclusions: United States v. W. T. Grant, 1953, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303; Gray v. Sanders, 1963, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed. 2d 821; Walling v. Helmerich & Payne, Inc., 1944, 323 U.S. 37, 65 S.Ct. 11, 89 L. Ed. 29; Walling v. Youngerman-Reynolds Hardwood Co., 1945, 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705; United States v. Oregon State Medical Society, 1952, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978; Walling v. Alaska Pacific Consol. Mining Co., 9 Cir., 1946, 152 F.2d 812; Bowles v. Huff, 9 Cir., 1944, 146 F.2d 428.

by conflict of interest from so doing, will bring about the very evil which the rule against his participation is designed to prevent, and a subsequent reversal based upon such participation cannot undo the damage that will have been done as a result of such participation. We therefore proceed to the merits.

4. *Is Young disqualified?* As we have heretofore indicated, the complaint filed in the trial court does not disclose the factual basis of Smith's claim. The questions asked by Young when he was taking Cord's deposition, the testimony of Young at the hearing of the motion to disqualify him, and statements made by him in briefs and other papers filed with this court, all make it clear that the claim is as we have described it earlier in this opinion. The question remains, was Young acting as Cord's attorney when the claimed agreement with Smith was made?

5. "Legal services rendered [by Young] to defendant [Cord] in re: Los Angeles Broadcasting Company and Los Angeles Broadcasting Company, Inc.

"In May, 1932, defendant owned fifty percent of the common capital stock of the Los Angeles Broadcasting Company, a corporation, which at that time operated radio stations KFAC and KFVD in Los Angeles. The other fifty percent interest in said corporation was owned by the Auburn Fuller Co. and the control and management of said Los Angeles Broadcasting Company was vested in three directors who were O. R. Fuller, John S. Swallow and V. J. Mapes. That the said Fuller was the President and owner of the Auburn Fuller Co. and that said Swallow and Mapes were employees of Fuller and subject to this control. That defendants had no representation on said Board of Directors although he owned fifty percent of the stock. That in May, 1932, the Los Angeles Broadcasting Company had borrowed from defendant the sum of $30,000. or upwards for which loan, defendant had the unsecured promissory note of said corporation. That in the month of May, the Auburn Fuller Co. became involved in serious financial difficulties and the defendant instructed plaintiff to take immediate steps to obtain the control of the management of said Los Angeles Broadcasting Company and if possible, to take physical possession of the assets

In 1934, Young filed in the Superior Court of the State of California, in and for the County of Los Angeles, an action, No. 373,844, in which he was the plaintiff and Cord was defendant. The complaint contains two counts; one for money had and received, the other for professional services rendered by Young to Cord in his capacity of an attorney-at-law. The amount of attorney's fees claimed was $250,000.00. The complaint was verified by Young on oath before a Notary Public. Cord demanded a bill of particulars and under date of July 28, 1934 Young filed a bill of particulars which was also verified by him on oath before a Notary Public. The bill of particulars is addressed to Cord and his attorneys and part of it relates to the second cause of action, i. e., for attorney's fees. At pages 22 to 24 there appear the allegations set out in the margin.[5]

of said company. That through negotiations with said O. R. Fuller, plaintiff succeeded in obtaining the resignations of directors Swallow and Mapes and electing in their place as directors the defendant and plaintiff, which left the third director O. R. Fuller, thereby giving the defendant the control of the Board of Directors of said corporation. Subsequently, to-wit, in June, 1932, the Auburn Fuller Co., owner of one-half of the capital stock of said corporation, became insolvent and a Federal equity receiver was appointed to take over and manage its affairs. That shortly prior to the appointment of said Receiver, the plaintiff had been elected President of said Los Angeles Broadcasting Company at the request of defendant, and had taken over the actual management of said corporation, having discharged the former manager thereof. That plaintiff also caused said corporation to execute a chattel mortgage on all of its assets in favor of defendant as security for the unsecured notes he then held. Later, to-wit, in the month of August, plaintiff obtained for the defendant a judgment against the Los Angeles Broadcasting Company for approximately $30,000., thereby giving the defendant, in addition to his said chattel mortgage, a judgment against said Los Angeles Broadcasting Company, the loans by defendant to said company having, at this time, approximated $60,000. That in January, 1933, plaintiff, at the re-

Before the foregoing action was filed, and on October 26, 1933, Young had written a letter to Cord. In the second paragraph of this letter Young says:

> "Before you left for Chicago, you requested me to outline to you a memorandum covering the legal services performed by me, as well as having father and Bill do the same thing."

The material portions of the letter are substantially the same as those of the bill of particulars.

At the hearing before the trial court, Young testified that, while the letter and the bill of particulars correctly describe services that he had rendered, he did not render them for Cord, but for the corporation, and that, even if he did render them to Cord, he was not acting as Cord's lawyer. He said that he wrote the letter because Cord told him to outline all services rendered as if they were legal services, to him, regardless of whether the services were for Cord or one or more of his controlled corporations, and that he cast his lawsuit in this form for the same reason. He particularly claimed that his activities on behalf of the Los Angeles Broadcasting Company, Inc., after he had had that new corporation incorporated and had taken over the entire operation for Cord, were in his capacity as an officer of the corporation and a business representative of Cord, and not as a lawyer. This flies squarely in the face of the allegations to which Young swore when he filed his bill of particulars in action No. 373,844.

If in fact, Young, acting for Cord, made a deal with Smith whereby Cord, who, through Young's efforts, had become the sole owner of the corporation owning the radio stations, agreed to transfer to Smith a one-half interest in any profit to be realized from their sale, Young was not acting for the radio stations or the corporation that owned them, but for Cord individually. He was purporting to deal with Cord's interest as the sole stockholder of the owning corporation, rather than with the assets owned by the corporation. Thus Young was acting, in making the claimed deal with Smith, as Cord's representative.

■■ The remaining question is, was he acting as Cord's attorney? In 1934 Young claimed that what he did for Cord in connection with the Los Angeles Broadcasting Company was done by him as Cord's attorney and he sued Cord on that basis. We do not think that it lies in the mouth of a lawyer, who has made such allegations under oath in an action against his client, to say, years later, when it suits his interests to do so, that the allegations mean something else, and that he was not acting as a lawyer. The Canons that require that a lawyer who has represented a client in a transaction may not thereafter represent the other party to the transaction, in an action against his client based upon the transaction, are not to be so readily avoided. (United States v. Trafficante, 5 Cir., 1964, 328 F.2d 117) We think that the courts are not only entitled, but required, to hold the lawyer to his sworn allega-

quest of defendant, caused the Los Angeles Broadcasting Company, Inc. to be incorporated, had the defendant assign to said Los Angeles Broadcasting Company, Inc. said chattel mortgage and note and said judgment, and when said assignment was completed, the Los Angeles Broadcasting Company, Inc. purchased all of the assets of the Los Angeles Broadcasting Company in consideration of the cancellation of said note and chattel mortgage and said judgment. That the defendant as consideration for the assignment of said chattel mortgage, note and judgment to the Los Angeles Broadcasting Company, Inc., received all of the

issued and outstanding capital stock of said Los Angeles Broadcasting Company, Inc., so that when the assets of the Los Angeles Broadcasting Company were transferred to the Los Angeles Broadcasting Company, Inc., as hereinabove mentioned, plaintiff [sic] became the sole owner of radio station KFAC and KFVD, whereas he had only been the owner of fifty percent thereof. That at the request of defendant, plaintiff was elected as President of said Los Angeles Broadcasting Company, Inc. and served in said capacity until sometime in April or May, 1934."

tions, made at a time when it was to his interest to claim that his actions for his client were done by him in his capacity of attorney for the client.

■ It does not make any difference that the particular transaction is one which could have been handled on the client's behalf by a layman, i. e., one in which his activity is not necessarily the practice of law. Lawyers customarily render both legal and non-legal services, without distinction, and bill their clients for those services on the basis that all of them are legal services. Clients repose special confidence in, and retain their lawyers because they are lawyers. They are entitled to expect that their lawyers will act as they are supposed to act, without quibble as to what particular services may have been technically legal services. (See In re Soale, 1916, 31 Cal.App. 144, 153, 159 P. 1065, 1069)

■ Young asserts that in dealing with Smith he was authorized by Cord to communicate with Smith, that therefore there are no confidential communications involved, and that the rule against representing conflicting interests applies only in cases where confidential communications are involved. He cites certain California cases which he says sustain his proposition.[6] If they do sustain it, we decline to follow them.[7] It is quite true that in this diversity action involving a contract presumably made and to be per-formed in California, the substantive law of California controls. But we do not think that the rule of Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, compels the federal courts to permit, in proceedings before those courts, whatever action by an attorney-at-law may be sanctioned by the courts of the state. When an attorney appears before a federal court, he is acting as an officer of that court, and it is that court which must judge his conduct.

■ In our opinion, the rule that an attorney who has represented one party in a transaction may not thereafter represent the other party in an action against his former client, arising out of or closely relating to the transaction, does not depend for its operation upon a subsidiary decision as to whether the attorney would or might be using or misusing confidential information derived from his former client.[8] We think that the famous words of Judge Cardozo in Meinhard v. Salmon, 1928, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L.R. 1, in which he was defining the duties of a trustee, are equally applicable to an attorney-at-law in relation to his conduct in the federal courts: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place.

6. Arden v. State Bar, 1959, 52 Cal.2d 310, 341 P.2d 6; Croce v. Superior Court, 1937, 21 Cal.App.2d 18, 68 P.2d 369; Petty v. Superior Court, 1953, 116 Cal.App. 2d 20, 253 P.2d 28; Murphy v. Waterhouse, 1896, 113 Cal. 467, 45 P. 866. Murphy does not touch the problem. Arden, Croce and Petty contain some language pointing in the direction that Young wants us to take. They are cases, however, in which the attorney had represented both parties to the former transaction. Not so here. Jacuzzi v. Jacuzzi Bros. Inc., 1963, 218 Cal.App.2d 24, 32 Cal.Rptr. 188 and Meehan v. Hopps, 1956, 144 Cal.App.2d 284, 301 P.2d 10 were cases in which attorneys for a corporation filed actions against officers and directors for wrongs to the corporation, and were permitted to do so. We need not decide whether we would follow them.

7. A number of California cases recognize that the obligation not to disclose confidential communications, or to use them against the client, is different from the duty not to accept subsequent adverse employment. See Wutchumna Water Co. v. Bailey, 1932, 216 Cal. 564, 15 P.2d 505; Galbraith v. State Bar, 1933, 218 Cal. 329, 23 P.2d 291; Sheffield v. State Bar, 1943, 22 Cal.2d 627, 140 P.2d 376; Grove v. Grove Valve & Regulator Co., 1963, 213 Cal.App.2d 646, 29 Cal.Rep. 150.

8. United States v. Trafficante, supra; Consolidated Theatres, Inc. v. Warner Bros. Circuit Management Corp., 2 Cir., 1954, 216 F.2d 920.

Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd."

Practical as well as theoretical considerations point to the result that we reach. It may be that an attorney will be the only person whose knowledge, disclosed upon the witness stand, can give the court the information that it must have if it is to decide a particular case correctly. Like all privileges, the attorney-client privilege may, in a particular case, be a clog upon the proper administration of justice. For that reason, a court may be astute to find a waiver, or otherwise to narrow the claim of privilege. No such problem exists when an attorney is disqualified from representing a client in a particular case. We have no doubt that Smith can find many competent lawyers to represent him among the more than 25,000 members of the State Bar of California.

It follows that the court erred in denying the motion to disqualify Attorney Young and that the court should now be directed to order Attorney Young not to act on behalf of Smith, directly or indirectly, in connection with the case of Smith v. Cord now pending in the trial court, whether as attorney of record or not. We leave open, however, the question as to whether Young can be a witness in the case. The record before us does not enable us to determine whether in so doing he would be violating the attorney-client privilege. This question will have to be determined upon a proper record if and when Young takes the stand as a witness.

Counsel for Cord asks us to direct that all further proceedings in the trial court be held before a judge other than the judge who heard the motion to disqualify Young. We think there is merit in his position. The record is strongly tainted with prejudicial testimony and conduct. Throughout the hearing in the trial court Young consistently and persistently indulged in every conceivable kind of invective against Cord, against Attorney Olson, Cord's lawyer, and against every witness who was called and testified for Cord in the matter. For example, in his written answer, objections and opposition to the motion to disqualify him, the opening paragraph of the paper reads as follows:

"The real title to the defendant's Motion should read 'Motion to Obstruct Justice and Fraudulently Suppress evidence.' Not a single fact or case related or cited by the defendant supports the frivolous, [sic] flimsy, trifling and stupid Motion of the defendant to disqualify the attorney for the plaintiff from representing the plaintiff in this case. The defendant's Motion from cover to cover is neuseatingly [sic] malodorous. The flippant manner in which material facts are distorted and misstated and the applicable law in the case is misrepresented to the Court is appalling."

This is mild stuff compared to the language in which Young indulged throughout the hearing, both when he was acting as an attorney in arguing the matter and examining and cross-examining witnesses, and when he took the witness stand himself.[9] While on the witness stand he took occasion to drag into the record a mass of immaterial matter, obviously designed to blacken the character of Cord and of others of whom he disapproved. The protests of Attorney Olson at the personal and vicious attacks that were made upon him and upon his client were almost entirely disregarded by the court.

---

9. In so doing, Young violated Canon 19 of the Canons of Ethics of the American Bar Association. He had associate counsel, but that counsel did not examine him in chief. Instead, Young simply took the stand and made a speech.

**526**

Young's conduct was a flagrant violation of Canons 17, 18 and 19 of the Canons of Professional Ethics of the American Bar Association. No court should tolerate this kind of conduct.

In the trial court, in answer to the charges made by Young, the attorneys for Cord made the following request:

"A lawyer's reputation is one of the most valuable assets a lawyer has. The undersigned attorney of record for E. L. Cord is proud of his reputation. By reason of the reckless statements and unjustified accusations made by Lyndol L. Young as attorney for plaintiff in this action against the undersigned attorneys of record for E. L. Cord, it is encumbent [sic] upon defendant and his attorneys to request that findings be made respecting said reckless charges. * * *

"It is most respectfully requested that as officers of this court, Mr. Young must be required to prove the truth of the reckless charges made, and in the absence of such proof, that specific findings be made clearing the record in this case as to the conduct of the attorneys representing E. L. Cord."

The court made no findings whatever on the matter. It owed the attorneys the protection that they sought. We have read the entire record of the proceedings before the court below and we can find nothing in it to justify any of the charges that were freely levelled by Young at counsel for Cord. On the contrary, they were doing nothing more than their duty to their client, and they did it in a dignified, restrained and entirely proper fashion. We find that the conduct of Cord's counsel was proper, was ethical, and was not subject to any of the criticisms levelled against them by Young.

The appeal is dismissed. The trial court is directed to set aside the order denying the motion to disqualify and for injunctive orders, filed in the trial court on May 28, 1964, and further directed to order that Lyndol L. Young, Esq. shall not at any time, directly or indirectly, and whether as attorney of record or not, represent, counsel or advise plaintiff Calvin J. Smith in connection with said action. It is further ordered that the Chief Judge of the United States District Court for the Southern District of California, Central Division, shall transfer the case of Cord v. Smith, No. 84–288–TC to another judge who shall conduct all further proceedings in the matter.