**Joseph A. YABLONSKI et al., Appellants,**

v.

**UNITED MINE WORKERS OF AMERICA.**

**No. 24945.**

United States Court of Appeals, District of Columbia Circuit.

Nov. 24, 1971.

Petition for Rehearing Denied Jan. 3, 1972.

Certiorari Denied April 24, 1972. See 92 S.Ct. 1609.

---

3.  *See generally* 1 K. Davis, Administrative Law Treatise, § 1.03 (1958).

blonski and Mrs. Clarice R. Feldman, Washington, D. C., were on the petition for appellants.

Mr. J. Gordon Forester, Jr., Washington, D. C., was on the opposition to the petition for appellees Boyle, Titler and Owens.

Messrs. Edward L. Carey, Harrison Combs, Willard P. Owens, Charles L. Widman, and Walter E. Gillcrist, Washington, D. C., were on the opposition to the petition for appellee United Mine Workers of America.

Before McGOWAN, ROBINSON and WILKEY, Circuit Judges.

PER CURIAM:

Last July 21 we held that a law firm retained by the United Mine Workers of America (UMWA) could not continue as its counsel in this case.[1] We did so because we found, in the firm's past and ongoing representation of UMWA's president in other litigation, the potential for conflict with obligations owing UMWA in this litigation.[2] In due course our mandate[3] issued to vacate the District Court's denial of a motion to disqualify the firm, and to remand the case for further proceedings in accordance with our opinion.[4]

Thereupon, the firm promptly withdrew, and UMWA's general counsel and all four members of his staff entered appearances on behalf of UMWA. Appellants immediately moved the District Court for an order disqualifying them, and the motion was denied. Appellants return here on a petition for further relief, characterizing the District Court's ruling as a failure to give full effect to the mandate.[5] We agree, and accordingly grant the petition.

I

Messrs. Joseph L. Rauh, Jr., John Silard, Elliott C. Lichtman, Joseph A. Ya-

We confront, at the outset, appellees' objection that we lack jurisdiction to

1. Yablonski v. UMW, 146 U.S.App.D.C. 252, 448 F.2d 1175 (1971).

2. *Id.* at 1177–1180.

3. Conformably with Fed.R.App.P. 41(a), the mandate consisted of "[a] certified

copy of the judgment and a copy of the opinion of the court * * *."

4. And see Yablonski v. UMW, *supra* note 1, at 1177.

5. See text *infra* at notes 11–14.

consider the petition. It is contended that the District Court's order refusing disqualification of UMWA house counsel was interlocutory and, as such, non-appealable;[6] and the record, it is argued, does not show a clear and indisputable right to extraordinary relief under the All Writs Act.[7] Appellants, on the other hand, charge that the order flies in the face of our earlier mandate, and that mandamus is available to correct the asserted departures.[8]

We think the order now challenged was appealable, just as we felt its predecessor was on the prior appeal where, indeed, our jurisdiction was not seriously questioned.[9] The present situation differs, however, from the former because the instant order has not been subjected to an appeal.[10] Instead, appellants seek summary relief allegedly needed to exact compliance with the mandate, and the quest is valid if its underlying premise is. A trial court "is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of [the] court deciding the case,"[11] and it is well settled that mandamus lies to rectify a deviation.[12] That approach may appropriately be utilized to correct a misconception of the scope and effect of the appellate decision,[13] or to prevent relitigation of issues already decided by the appellate court.[14] These are objectives to which appellants lay claim as justifications for action by this court at this time.

We perceive nothing removing the order under attack from the mainstream of mandamus doctrine.[15] We are mindful, of course, that "[t]he peremptory common-law writs are among the most potent weapons in the judicial arsenal"[16] and that, "[a]s extraordinary remedies, they are reserved for really extraordinary causes."[17] We are mindful, too,

---

6. See note 9, *infra.*

7. 28 U.S.C. § 1651 (1970).

8. See text *infra* at notes 11–14.

9. The cases have reached apparently conflicting conclusions where the disqualification was sought upon ethical considerations alone. Compare Uniweld Prods., Inc. v. Union Carbide Corp., 385 F.2d 992, 994 (5th Cir. 1967), cert. denied, 390 U.S. 921, 88 S.Ct. 853, 19 L.Ed.2d 980 (1968), with Marco v. Dulles, 268 F.2d 192 (2d Cir. 1959), and Fleischer v. Phillips, 264 F.2d 515, 517 (2d Cir.), cert. denied, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959). See also Cord v. Smith, 338 F.2d 516, 521 (9th Cir. 1959). The situation differs materially, however, where the disqualification was predicated additionally upon significant impingement on a specific legislative policy. Tomlinson v. Florida Iron & Metal, Inc., 291 F.2d 333, 334 (5th Cir. 1961). See also 9 Moore, Federal Practice ¶ 110.13 [10] at 190 (2d ed. 1970). That, we think, is the situation here. See text *infra* at note 21.

10. See text *supra* at note 4. Appellants might alternatively have achieved the same end—an expedited ruling here—by taking an appeal from the order and then moving in this court for summary reversal.

11. Thornton v. Carter, 109 F.2d 316, 320 (8th Cir. 1940).

12. See, *e. g.,* the cases cited *infra* notes 13–14.

13. United States v. Haley, 371 U.S. 18, 83 S.Ct. 11, 9 L.Ed.2d 1 (1962); Baltimore & O. R. Co. v. United States, 279 U.S. 781, 785, 49 S.Ct. 492, 73 L.Ed. 954 (1929); In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S.Ct. 291, 40 L.Ed. 414 (1895). See also Erie Bank v. United States Dist. Ct., 362 F.2d 539 (10th Cir. 1966).

14. In re Potts, 166 U.S. 263, 265–267, 17 S.Ct. 520, 41 L.Ed. 994 (1897); Thornton v. Carter, *supra* note 11; Federal Home Loan Bank of San Francisco v. Hall, 225 F.2d 349, 385 (9th Cir. 1955). See also Briggs v. Pennsylvania R.R., 334 U.S. 304, 305, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948); Sibbald v. United States, 37 U.S. (12 Pet.) 488, 491, 9 L.Ed. 1167 (1838).

15. See Cord v. Smith, *supra* note 9, 338 F.2d at 521–522.

16. Will v. United States, 389 U.S. 90, 107, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).

17. Ex parte Fahey, 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041 (1967).

"that only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy."[18] We think however, that appellants' petition presents a situation wherein relief in the nature of mandamus would be appropriate.

██ It is clear that the case may be sufficiently extraordinary for mandamus "where it [is] necessary to confine a lower court to the terms of an appellate tribunal's mandate."[19] It seems just as clear that the circumstances may be extraordinary when an attorney plainly disqualified by standards articulated in a prior appellate judgment is nonetheless permitted to function as counsel in the litigation. "Continued participation as an attorney, by one who is disqualified by conflict of interest from so doing, will bring about the very evil which the rule against his participation is designed to prevent, and a subsequent reversal based upon such participation cannot undo the damage that will have been done as a result of such participation."[20] That, we believe, is the more so in the case at bar. As our first opinion pointed out, representation of a labor union by counsel free of possibly conflicting obligations to adverse parties is directly related to attainment of the goals Congress envisioned when it passed the Labor-Management Reporting and Disclosure Act of 1959.[21] Consequently, "if the order [denying disqualification] was in error, the harm resulting therefrom is in the nature of the frustration of a public policy which can-

not be avoided or mitigated by any appeal taken after the trial, with [counsel] participating, is finally ended."[22] We conclude, then, that we possess jurisdiction to entertain appellants' petition, and to afford relief if the showing it makes demands.

## II

We had thought that the factual basis for our earlier decision was evident from the circumstances we cited as relevant, and its legal basis equally so from the principles we identified as controlling. By the same token, we believed that we had furnished the District Court with unequivocal standards which successor counsel for UMWA would have to meet. We can explain the court's latest ruling on union counsel only as a misunderstanding of what our opinion and mandate really meant. As much for future as for present purposes, then, we briefly recapitulate our initial holding.

This suit, brought under Section 501(b) of the Labor-Management Reporting and Disclosure Act of 1959,[23] is for an accounting and restitution of allegedly misspent union funds. Joined as defendants and charged with the expenditures are W. A. Boyle, UMWA's president, and two other UMWA officers. The firm originally appearing for UMWA had represented and was still representing Boyle in other lawsuits accusing him of misconduct in office. Appellants sought to disqualify the firm as union counsel, and the District Court upheld the arrangement.[24] On appeal, firm counsel insisted that UMWA's in-

18. Will v. United States, *supra* note 16, 389 U.S. at 95, 88 S.Ct. at 273, quoting De Beers Consol. Mines v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945).

19. Will v. United States, *supra* note 16, 389 U.S. at 95–96, 88 S.Ct. at 273–274. See also United States v. United States Dist. Ct., 334 U.S. 258, 68 S.Ct. 1035, 92 L.Ed. 1351 (1948).

20. Cord v. Smith, *supra* note 9, 338 F.2d at 521–522.

21. Yablonski v. UMW, *supra* note 1, 448 F.2d at 1179, quoted in text *infra* at note 30.

22. Tomlinson v. Florida Iron & Metal, Inc., *supra* note 9, 291 F.2d at 334.

23. 29 U.S.C. § 501(b) (1970).

24. During the first six months of the litigation, the firm had also represented the officers in this case as well, but ceased doing so when appellants' motion to disqualify was presented. We found, in the circumstances, no impropriety in that regard. Yablonski v. UMW, *supra* note 1, 448 F.2d at 1177.

stitutional interests and Boyle's individual interests were substantially the same [25]—a proposition we were unable to accept.[26] They saw no conflict in the dual representation—a matter on which we disagreed [27]—and gave assurances that if any arose they would withdraw as union counsel.[28] While recognizing that any conflict might well be ascertained in this fashion,[29] we concluded

> that the objectives of the Labor-Management Reporting and Disclosure Act would be much better served by having an unquestionably independent new counsel in this particular case. The public interest requires that the validity of appellants' charges against the UMWA management of breach of its fiduciary responsibilities be determined in a context which is as free as possible from the appearance of any potential for conflict of interest in the representation of the union itself.[30]

■ The record now reveals a new arrangement for union counsel which in final analysis does not differ essentially from the older. To be sure, some of the voluminous allegations the parties make are in apparent conflict, and in some particulars the general picture is obscure. Nevertheless, from the mass of data presented by the parties critical facts emerge sharply and without controversy. UMWA general counsel and three members of his staff are representing or have represented to some extent union officers who are accused of wrongdoing in this case.[31] One staff member is the son of one of such officers, and another is the son of a nonparty officer whom the charges conceivably could implicate. Atop that, three of the five attorneys are themselves named in appellants' complaint as recipients of payments allegedly made by officers in breach of fiduciary duties.

Considerably more is both charged and largely denied, but merely to recite only these several uncontested circumstances is to demonstrate satisfactorily that house counsel as a group [32] do not fit the specifications we previously laid down for those who would undertake representation of UMWA in this cause. They simply are not "unquestionably independent new counsel"[33] whose contemplated appearance would enable resolution of the issues "in a context which is as free as possible from the appearance of any potential for conflict of interests in the representation of the union itself."[34] It follows that the license the District Court gave them to remain union counsel is a grave departure from the terms of our prior mandate, and sounds the call for corrective action here.[35]

### III

The District Court's ruling on appellants' latest motion for disqualification appears to have been influenced primarily by the court's belief that "a passive role" was in store for UMWA in this case. The thought seemingly was that, irrespective of other factors, house counsel could function as counsel for UMWA as long as the latter's part in the litigation did not become aggressive. The short answer is that on that basis the law firm originally retained as union counsel was not disabled from continuing in that capacity. Our holding that it could not be permitted to do so necessarily ruled out the theory which the

25. *Id.* at 1181.

26. *Id.* at 1180–1182.

27. *Id.* at 1178–1182.

28. *Id.* at 1179.

29. *Id.* at 1179.

30. *Id.* at 1179, 1180.

31. While the representation by others than the general counsel has usually been quite limited, two of the three staff members

are those mentioned in the next succeeding text sentence, and the third is now deceased. See also note 32, *infra.*

32. House counsel apparently contemplated representation as a group, but in any event none of them is completely free from the difficulties specified in text.

33. See text *supra* at note 30.

34. See text *supra* at note 30.

35. See text *supra* at notes 11–14, 19–22.

District Court saw fit to adopt.[36] The court was not at liberty to utilize as ground for a fresh determination a consideration which our earlier decision had already implicitly discarded.[37]

Perhaps more fundamentally, there is no predicate for a present assumption that UMWA must or will remain an inactive party. UMWA may, but is not inexorably bound to, take and maintain a detached position on the merits. To be sure, "as a general proposition, a labor organization should be kept in a neutral role when it can demonstrate no interest in the litigation beyond a shielding of officials whose activities are under attack;"[38] moreover, "even when permitted an adversary role, it should be limited to defenses designed to safeguard . . . institutional issues at stake."[39] That is because "those who for good cause bring and in good faith bear the brunt of the fight should be protected against harassment and oppression through the assertion of what are merely the defenses of the individual parties."[40] "At the same time," however, "the vital concerns of the organization in the litigation," if any it has, "must be recognized and given their just due."[41] UMWA "is free to say which side of a controversy involving a legitimate institutional interest it will take;"[42] and "[i]t is for [UMWA], and not the Court, to determine its true position, and to say in which direction its advan-

tage lies."[43] It is this very prerogative that makes it essential that UMWA have the benefit of "unquestionably independent . . . counsel"[44] to advise it on the legal aspects of the suit and thereafter, if desired, to represent it therein.[45]

Much of appellees' presentation is devoted to attempted justification of UMWA's representation by its house counsel on the ground that its institutional interests as a union coincide with the individual defensive interests of the officers who are sued.[46] That approach puts the cart before the horse. "Where, as here, union officials are charged with breach of fiduciary duty, the organization is entitled to an evaluation and representation of its institutional interests by independent counsel, unencumbered by potentially conflicting obligations to any defendant officer."[47] In our earlier opinion, we observed that "[i]n trying to achieve a valid definition of an institution's interest, it would seem that counsel charged with this responsibility should be as independent as possible."[48] We admonished that "counsel for the UMWA should be diligent in analyzing objectively the true interests of the UMWA as an institution without being hindered by allegiance to any individual concerned."[49] Even more emphatically we stated that "in the exploration and the determination of the truth or falsity of the charges brought by these individ-

36. Compare United States v. Haley, *supra* note 13.

37. See text *supra* at note 14.

38. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Hoffa, 242 F.Supp. 246, 253 (D.D.C.1965).

39. *Id.* (footnote omitted).

40. *Id.* at 253–254.

41. *Id.* at 254.

42. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Hoffa, 52 CCH Lab. Cas. ¶ 16, 634 at 23, 518 (D.D.C. 1965).

43. *Id.*

44. See text *supra* at note 30.

45. Yablonski v. UMW, *supra* note 1, 448 F.2d at 1179, 1181.

46. We can say as accurately here as in our earlier opinion we said of firm counsel there involved that "[c]ounsel's interpretation of the 'institutional interest' of the union appears to have been broad enough to authorize UMWA counsel to undertake practically everything worthwhile in the defense of this lawsuit." *Id.* at 1180.

47. International Brotherhood of Teamsters, Chaffeurs, Warehousemen and Helpers of America v. Hoffa, *supra* note 38, 242 F.Supp. at 256.

48. Yablonski v. UMW, *supra* note 1, 448 F.2d at 1181.

49. *Id.* at 1179.

ual appellants against the incumbent officers of the union and the union itself as a defendant, the UMWA needs the most objective counsel obtainable." [50] Only after satisfaction of these threshold requirements does counsel's assessment on identity of union and officer interests merit judicial consideration. And now, as before, "[e]ven if we assume the accuracy of the appellee's position at the present time that there is no visible conflict of interest, yet we cannot be sure that such will not arise in the future." [51]

Appellants' argument does not range so far as to suggest that house counsel can never be permitted to represent a union in a Section 501 action.[52] Nor does it harbor the thesis that the cordiality normally exchanged between union executive and house counsel necessarily works a disqualification. Our prior opinion drew the line when, speaking to a cognate point, we said:

> We are cognizant that any counsel to represent the UMWA selected by President Boyle will be to some degree under his control. But such counsel will still only have one client—the UMWA—to represent in matters growing out of the union's affairs.

Such counsel would never be professionally obligated to consider Boyle's personal interests, because they would not be representing him individually in related matters.[53]

■ In sum, a *sine qua non* of permissible union representation in a Section 501 action is the absence of any duty to another that might detract from a full measure of loyalty to the welfare of the union. House counsel no less than outside counsel must survive that test.[54] In this instance, house counsel plainly do not.

The District Court's refusal to disqualify house counsel as union counsel in this case is manifestly in the teeth of the definitive rulings we made when the case was first here. By the same token, appellants' right to relief assuring conformance with our prior mandate is clear and indisputable.[55] We accordingly grant the petition, but in the belief that issuance of a formal writ is unnecessary. We trade instead upon our confidence that without more the District Court will now take action to rectify the error which gave birth to the present proceeding.[56]

Petition granted.

50.  *Id.,* at 1179.

51.  *Id.* at 1179.

52.  See International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Hoffa, *supra* note 42, 242 F.Supp. 246.

53.  Yablonski v. UMW, *supra* note 1, 448 F.2d at 1182.

54.  Appellees' reliance upon International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Hoffa, *supra* note 42, is misplaced. While the union there involved was permitted representation by one of its house counsel, we pointed out in our earlier opinion that that case "did not present a situation like that of the case at bar, where the regular union counsel seeks to represent the union in a 'derivative' action while at the same time repre-

senting in pending and related matters an individual officer charged in that action." Yablonski v. UMW, *supra* note 1, 448 F.2d at 1179 n. 7. Nor in that case were there the professional and familial relationships or the individual involvements with the charges asserted that we find in the instant litigation.

55.  See, *e. g.,* Will v. United States, *supra* note 16, 389 U.S. at 96, 88 S.Ct. 269, 19 L.Ed.2d 305; Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953).

56.  Compare, *e. g.,* United States v. Haley, *supra* note 13, 371 U.S. at 20, 83 S.Ct. 11, 9 L.Ed.2d 1; Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook R.R., 136 U.S.App.D.C. 230, 232, 420 F.2d 72, 74 (1969), cert. denied, 397 U.S. 1024, 90 S.Ct. 1258, 25 L.Ed.2d 533 (1970).