Charles W. DUNCAN, Secretary of Energy, and the United States Department of Energy, Petitioners,

v.

The Honorable Frank G. THEIS, Chief Judge of the United States District Court for the District of Kansas, Respondent.

No. 10–22.

Temporary Emergency Court of Appeals.

Argued Nov. 6, 1979.

Decided Dec. 27, 1979.

John P. McKenna, Washington, D. C., with whom Nancy C. Crisman and Haywood Torrence, Jr., Dept. of Energy, Washington, D. C., and Barbara Gordon, Dept. of Justice, Washington, D. C., were on the brief for petitioners.

Joseph W. Kennedy, Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan. (Robert I. Guenthner, Wichita, Kan., on the brief), Daniel Joseph, Akin, Gump, Hauer & Feld, Washington, D. C. (Warren E. Connelly, Washington, D. C., with him on the brief), and John E. Sparks, Brobeck, Phleger & Harrison, San Francisco, Cal. (G. Stewart Stone, Jr., San Francisco, Cal., on the brief), with whom A. B. Conant, Jr. and Charles W. Pauly, Shank, Irwin, Conant, Williamson & Grevelle, Dallas, Tex., Richard L. Bohanon, Bohanon & Barth, Oklahoma City, Okl., Thomas Brown, Brown & Fox, Kansas City, Mo., John R. Cope and Arthur M. Meyer, Jr., Bracewell & Patterson, Washington, D. C., David J. Beck and Ronald D. Secrest, Fulbright & Jaworski, John L. Carter, Vinson & Elkins, Houston, Tex., and George G. Olsen and Forbes Maner, Williams & Jensen, P. C., Washington, D. C., were on the briefs for respondents.

Before CHRISTENSEN, BECKER and ZIRPOLI, Judges.

CHRISTENSEN, Judge.

The United States Department of Energy and the Secretary of Energy have petitioned this court for a writ of mandamus, pursuant to 28 U.S.C. § 1651 and Rule 21 of the Federal Rules of Appellate Procedure, for the purpose of directing the Honorable Frank G. Theis, Chief Judge of the United States District Court for the District of Kansas to execute the mandate of this court in accordance with its decision in *Energy Reserves Group, Inc. v. Department of Energy*, 589 F.2d 1082 (Em.App.1978).[1] Petitioners assert that the respondent Judge has declined to give effect to the court's decision and judgment and has treated as subject to relitigation upon remand issues that have been settled conclusively by this court. It is particularly charged that the district court has refused to dissolve a preliminary injunction entered in violation of our decision, thus continuing to restrain the Department of Energy from enforcing its ruling and regulations and permitting the plaintiffs before the lower court to avoid with impunity valid price controls and to thereby compound the current escalation of energy costs of the consuming public, has entered additional preliminary injunctions with the same effect and has ordered extensive discovery on the very points resolved as matters of law by this court.[2]

The plaintiffs in the district court, responding to the petition, take the position that this court's decision on appeal settled only the "procedural validity" of the administrative ruling in question, but that the "substantive validity" of such ruling and that of the regulation which it interpreted has not been ruled upon, and that the proceedings in the lower court after remand have been confined to the issues not decided by this court.[3]

Judge Becker's prevailing opinion together with Judge Zirpoli's dissenting opinion in

---

1. This decision reversed the holding of the respondent judge in consolidated cases designated *Energy Reserves Group, Inc. v. Department of Energy* and reported as such in 447 F.Supp. 1135 (D.Kan.1978) that Federal Energy Administration Ruling 1974–29 (39 Fed.Reg. 44414, Dec. 24, 1974), which interpreted the "stripper well exemption" as excluding injection wells from the "well count", was void because it was published without utilizing the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553(b).

2. It is the government's position that while the procedural issue "unquestionably was the immediate issue before the court, it is equally clear that because of the arguments advanced by respondents and the interdepedence of the issues, the court in the course of its exegesis necessarily addressed the controlling [substantive] issues in the case. It is these pronouncements that effectively foreclose contentions that respondents now raise on remand relating to reasonableness of the interpretation and its consistency with the state statute and regulations." (Petitioners' reply memo.)

3. Additionally, plaintiffs in numerous cases now consolidated for further pretrial proceedings with the appealed cases following the filing of our mandate also assert that even the "procedural validity" of the administrative ruling has not yet been established as to them. The consolidation and transfer of these additional cases to Judge Theis for further pretrial proceedings was ordered by the Judicial Panel on Multidistrict Litigation in June, 1979. *In re Dept. of Energy Stripper Well Exemption Litigation*, 472 F.Supp. 1282 (1979).

*Energy Reserves Group, supra,* have so comprehensively and accurately outlined the history of the statutory stripper well exemption and related administrative regulations and rulings as to render any further restatement here unnecessary. But apparently it will be helpful to review briefly the issue initially presented to this court, the dimensions of our consideration of that issue and what was decisively agreed upon in the opinions in arriving at the judgment and mandate of this court.

Prior to the district court's initial ruling, the parties had entered into a stipulation consolidating the three Kansas cases for a ruling of the district court on three issues:

1. Whether Ruling 1974–29 . . . is arbitrary, unreasonable or in conflict with the Trans-Alaska Pipeline Authorization Act, 43 U.S.C. §§ 1651 *et seq.* and the Emergency Petroleum Allocation Act of 1973 as amended, 15 U.S.C. §§ 751 *et seq.*

2. Whether Ruling 1974–29 was issued in compliance with the APA, 5 U.S.C. § 553.

3. If Ruling 1974–29 is valid, whether the ruling may be applied to the plaintiffs' sales of crude oil prior to December 24, 1974, the date on which the ruling was issued by the FEA.

The district court's memorandum decision, *Energy Reserves Group, Inc. v. Department of Energy,* 447 F.Supp. 1135 (D.Kan.1978), was confined to a determination of the issue of procedural legality of the ruling. The court expressly stated that in view of its conclusion that the ruling was void for want of rule making procedures under the APA, it "will not rule upon the issue of whether Ruling 1974–29, even if it were legally enacted, would be arbitrary, unreasonable, or in conflict with its statutory authority." 447 F.Supp. at 1150. It was also stated: "Having found Ruling 1974–29 void and ineffective to affect the rights of plaintiffs herein, the Court need not address plaintiffs' third principal contention as to retroactive application of such Ruling." 447 F.Supp. at 1151.

The ultimate issue on appeal was appropriately defined by Judge Becker, 589 F.2d at 1085, as follows:

Whether the District Court erred in holding that Federal Energy Administration ("FEA") Ruling 1974–29 (39 F.R. 44414, Dec. 24, 1974), which interpreted the stripper well exemption as excluding injection wells from the "well count" for purposes of applying the exemption, is null and void and without effect because it was published without utilizing the notice and comment provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b).

The prevailing opinion then comprehensively analyzed and discussed all aspects of this problem, including statutory underpinnings, reasonableness of the ruling in question and its conformance to the duly noticed and issued regulations of which it purported to be an interpretation, and concluded, among other things, that the ruling had no significant impact to render it legislative in character, if indeed the rule of impact bore upon this problem, because the regulation and the interpretation said essentially the same thing.

The prevailing opinion of this court concluded: "In each of these actions the judgment is reversed and the action remanded for further proceedings consistent with this opinion." 589 F.2d at 1101.

Judge Christensen concurred "in the result reached above and with most of Judge Becker's analysis and reasoning", specified the points of Judge Becker's analysis and reasoning concerning which he was "troubled", none of which involved any question touching upon Judge Becker's view that the basic regulation itself limited the well count to wells which directly produced or yielded petroleum, specifically agreed with Judge Becker that there was no significant impact operating against the ruling in question, and restated with the same effect that the administrative ruling was interpretive and not legislative in view of the same meaning reflected in the duly noticed regulation on which the interpretation was based.

Judge Zirpoli dissented on the ground that the ruling in question, as distinguished

from the regulation which it purported to interpret, was legislative in character and had such significant impact as to mandate compliance with § 553(b) of the APA, and that is all that he decided.

While the unsuccessful appellees requested extensions of time to seek rehearing and rehearing en banc, presumably preliminary to a petition for certiorari, their request was withdrawn and they elected not to seek review in the Supreme Court by certiorari.

■ In sum, the present situation is that the consistency of Ruling 1974–29 with the APA has been finally established and, in connection with the ruling on the issue before the court and particularly in dealing with the question of substantial impact, both judges concurring in the result clearly indicated the majority view that the ruling in question did not represent any substantial departure from the meaning of the regulation, and for this reason had no substantial impact as an interpretive ruling.[4] Whether the regulation itself was within the authority of the FEA to promulgate,

despite its conceded procedural regularity, or whether it was arbitrary or capricious does not so clearly appear from a consideration of the decision as a whole.[5]

The unjustified unwillingness of the government on the one hand to acknowledge this differentiation in its effort to block all further proceedings before Judge Theis by way of discovery or otherwise, and on the other hand the mistaken position of some of the plaintiffs that our decision essentially settled nothing, or at most only the issue of "procedural validity" as affecting the parties involved in the appeal, may account in some measure for the difficulties the lower court and the parties now profess to see within our mandate. Yet, it was rendered clear during the oral argument on the petition for mandamus now before us that the decision of this court set at rest the question of the compliance of the ruling in question with the APA because it was simply a restatement of the meaning and effect of the regulation on which it was based.[6]

---

4. Judge Becker expressly held that "Ruling 1974–29 is a reasonable interpretation of the term 'average daily production' as used in § 406 of TAPAA, § 4(e)(2)(A) of EPAA, and in 10 C.F.R. § 210.32(b), found to be valid by the district court." 589 F.2d at 1098. Judge Christensen clearly stated his agreement that no significant impact operated against the ruling in question because "a holding that 'a well which produces crude petroleum' means, as contemplated by the properly adopted and subsisting regulations and in view of the seminal statute, a well that produces or yields such petroleum directly rather than one which may be utilized as a part of a system to obtain indirectly crude petroleum from a producing well, seems essentially the sort of an interpretation that must have been intended by the APA exception to the rulemaking requirement." 589 F.2d at 1103.

5. As pointed out by Judge Becker at pages 1087–88 of the prevailing opinion, the statutory treatment of the stripper well exemption has closely followed the wording of § 4(e)(2)(A) of the Energy Petroleum Allocation Act of 1973 reading as follows: "The regulation promulgated under subsection (a) of this section shall not apply to the first sale of crude oil produced in the United States from any lease whose average daily production of crude oil for the preceding calendar year does not exceed ten barrels

per well." The regulation contained in 10 C.F.R. § 210.32(b) described the phrase "average daily production" to be the average daily production computed by dividing: "the qualified maximum total production of crude oil . . . produced from a property, divided by a number equal to the number of days in the year times the number of wells that produced crude oil . . . from that property in that year. . . ." It is arguable that the statutory emphasis upon "average daily production" of a lease and the lack of any more direct linkage of the definition of a "well" for the purpose of computing average daily production, represents a difference in the degree of definiteness by which injection wells are precluded as part of the "count" when examined against the regulation providing that wells to be so counted must "produce crude oil". In any event, Judge Christensen, unlike Judge Becker, did not specifically comment on the statute except as a reference highlighting the correspondence of the ruling and the regulation.

6. Judge Zirpoli: Let's assume that Judge Theis proceeds and allows you the discovery you request and the discovery procedure is finally completed. Do you consider or say for one moment that you may relitigate the ruling of this court on the procedural aspects of the rule?

It may well be beyond the issues thus clearly resolved by this court's decision on appeal that in line with Judge Becker's persuasive analysis and reasoning and as he has suggested, 589 F.2d at 1092, the administrative regulation and its interpretation constituted not only a reasonable construction of the statute as well, but in addition "may be the construction ultimately preferred by the courts." But since our decision did not definitely resolve any statutory problem, there is presently no basis to cut off further proceedings in the district court except for the mandated judgment sought by the petitioners.

We deny the government's petition for a writ of mandamus because of the narrow reach of this extraordinary remedy,[7] unresolved issues as to whether the ruling in question is arbitrary, capricious or unreasonable in the light of, or is in conflict with, or is beyond the authority granted by controlling statutory provisions,[8] the province and duty of the district court, consistent with the mandate of this court and the doctrine of *stare decisis*, to exercise its reasonable discretion in determining interlocutory proceedings, record making and judgments in the first instance,[9] the consolidation and addition of parties plaintiff following the determination of the prior appeal and the issuance of the mandate of this court, and our confidence that Judge Theis upon this clarification of what we thought was manifest in our prior decision will not transgress the fair meaning and effect of our mandate or proper application of the doctrine of *stare decisis*.[10] A fragmentary

Mr. Kennedy [counsel for the appellees in the *Energy Reserves Group* appeal and main spokesman for the respondents in this proceeding]: No your Honor, we do not—

Judge Zirpoli: Do you say that Judge Theis may for one moment reconsider this ruling?

Mr. Kennedy: Certainly not as far as—

Judge Zirpoli: The argument is made here by government counsel that that is—that that appears one of the objectives that you have in mind.

Mr. Kennedy: No, that is absolutely incorrect. We have said—we say now to your Honors that we realize that we are bound by this court's determination of the procedural invalidity [sic] of ruling 74–29. None of our discovery requests—and there are 24 questions in this case—[apparently numerous other requests on behalf of added plaintiffs have been allowed by the district court] none of those went to the procedural validity or procedural context of 1974–29. None went to the substantial impact test. We realize that we are bound and we are not—

Judge Zirpoli: What about the interrogatories on substantial impact?

.    .    .    .    .

Mr. Kennedy: We are not engaging in that.

Judge Zirpoli: You are not engaging in any [of that] whatsoever?

Mr. Kennedy: No we are not your Honor.

.    .    .

Judge Zirpoli: Not even for the purpose of determining that the regulation exceeded the authority of Congress?

Mr. Kennedy: Oh yes we are on that. .    .

Judge Zirpoli: Oh, well then you are, that's what I wanted to know. You are going to make some—such discovery insofar as it relates to substantial impact?

Mr. Kennedy: Insofar as whether or not the regulation exceeded the authority of Congress, yes. But not so far as to whether or not the ruling had a substantial impact. We think that that issue has been foreclosed by this court's opinion.

7. *Kerr v. United States District Court for the Northern District of California*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953); *Ex parte Fahey*, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947); *State Farm Mut. Auto. Ins. Co. v. Scholes*, 601 F.2d 1151 (10th Cir. 1979).

8. *See Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *but compare Hormel v. Helvering*, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941).

9. *American Express Warehousing Ltd. v. TransAmerica Ins. Co.*, 380 F.2d 277 (2d Cir. 1967); *Paramount Film Distributing Corp. v. Civic Center Theater*, 333 F.2d 358 (10th Cir. 1964); *Chemical and Industry Corp. v. Druffel*, 301 F.2d 126 (6th Cir. 1962); *Byram Concretanks, Inc. v. Meany*, 286 F.2d 170 (3d Cir. 1961). *Cf. Standard Oil Co. v. DOE*, 596 F.2d 1029 (Em.App.1978).

10. We had thought that the factual basis for our earlier decision was evident from the circumstances we cited as relevant, and its legal basis equally so from the principles we identified as controlling. By the same token, we believed we had furnished the District Court with unequivocal standards which successor counsel .    .    . would have to meet.

or incomplete record with respect to claimed abuse of court processes, or interspersion with predominantly courteous, circumspect and commendable probing by the trial judge in his colloquies with counsel of faintly recalcitrant observations,[11] do not warrant the action now requested by petitioners.

In so withholding the peremptory writ we do not mean to be understood as accepting or suggesting that the binding meaning and effect of the mandate is limited to express or formally mandatory language as distinguished from its reasonable meaning, spirit and effect in context of the decision agreed upon by the majority of the judges of the court,[12] that our decision, even though involving the main, concurring and dissenting opinions, is not mandatory and binding upon remand in the light of context, spirit, unity of opinion and reasonable effect,[13] that as to refiners who were not parties to the appeal, but who are now before the same court in essentially the same position as those who were, the doc-

. . . We accordingly grant the petition, but in the belief that issuance of a formal writ is unnecessary. We trade instead upon our confidence that without more the District Court will now take action to rectify the error which gave birth to the present proceeding.
*Yablonski v. United Mine Workers of America,* 147 U.S.App.D.C. 193, 196, 454 F.2d 1036, 1039 (D.C.Cir.1971), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972).

11. I'm bound by which the other court says. I don't necessarily agree with what the majority have said, but I disagree very strongly. I think they missed the boat. . . . [Tr. of Prel. Pretrial Conf., Dec. 1, 1978.] I'm not going to capitulate so easily. . . . And I would like to see the matter adjudicated myself, by the Supreme Court eventually—and that is probably where it will get to. . . .
And I do agree, I think, that the permanent injunctions have to be dissolved, in view of TECA's opinion, but that doesn't foreclose me from turning right around and entering—which I think I'm going to do—another preliminary injunction, on the basis of the probable invalidity of the statute [sic] in my opinion. . . . I'm obligated by *stare decisis* in the respect that I have to have—from the other courts—to follow that. So, I think they're going to get a piece of the loaf, but I don't follow their other reasoning. . . .
There are other aspects in the opinion, as I've said before, in the division that was in the, among the TECA judges that—even by Judge Christensen—that he didn't buy everything that Judge Becker—you really had three judges sounding off—and we've got Judge Eubanks down in the District of Oklahoma, and Woodward in Texas, and myself here, and I think the least that can be said is that there is a division of judicial opinion [Tr. of pretrial hearing February 1, 1979].

12. *See Vendo Co. v. Lektro-Vend Corp.,* 434 U.S. 425, 98 S.Ct. 702, 54 L.Ed.2d 659 (1978).
A trial court "is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of

the opinion of [the] court deciding the case," and it is well settled that mandamus lies to rectify the deviation.
*Yablonski, supra,* 147 U.S.App.D.C. at 195, 454 F.2d at 1038.
[T]here would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate on chances from changes in its members.
*United States v. Camou,* 184 U.S. 572, 574, 22 S.Ct. 505, 506, 46 L.Ed. 694 (1902).
A mandate is completely controlling as to all matters within its compass, but on remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal. Since, however, a final judgment upon the merits concludes the parties as to all issues which were or could have been decided . . . it is obvious that such a judgment of this court on appeal puts all such issues out of the reach of the trial court on the remand of the case. That court is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of this court deciding the case. . . . If a judgment or decree of this court which disposes of a case upon the merits has become final, no purpose can be served by considering whether it is right or wrong. A judgment which is wrong, but unreversed, is as effective as a judgment which is right. [Citations omitted.]
*Thornton v. Carter,* 109 F.2d 316, 320 (8th Cir. 1940).
Mandamus will lie when the lower court disobeys, mistakes or misconstrues the meaning of a decision on appeal upon remand. *General Atomic Co. v. Felter,* 436 U.S. 493, 98 S.Ct. 1939, 56 L.Ed.2d 480 (1978). *Vendo Co. v. Lektro-Vend Corp., supra.*

13. A plurality of opinions of course does not mean that there is not a binding decision of the court. *Vendo Co. v. Lektro-Vend Corp., supra; Benton v. Kansas City,* 237 Mo.App. 385, 168 S.W. 476, 478 (1943).

trine of *stare decisis* is not controlling upon the district court,[14] nor that interlocutory injunctions or discovery programs inconsistent with a mandate or repugnant to a proper application of the doctrine of *stare decisis* are beyond the reach of a peremptory writ or other remedy.[15]

Under existing circumstances the writ is denied.

**14.** A previous opinion deciding contentions identical in facts, law and application with those in the instant case should be followed on the principle of *stare decisis*. 21 C.J.S. § 186(f); *U. S. v. Egelak*, 173 F.Supp. 206 (D.Alas.1959).

Where two cases are consolidated in the trial court, and the records on the two appeals are substantially the same, a decision of the Supreme Court on questions presented on one of the appeals will be regarded as a ruling precedent for determining similar questions presented on the other appeal. *Sinker-Davis Co. v. Indianapolis*, 177 Ind. 417, 94 N.E. 886 (1911).

**15.** We are concerned with suggestions in the record of the nature and extent of discovery being sought before the district court for the apparent purpose of further attacking the "procedural validity" of the ruling in question and for the probing of the mental processes of officials connected with it. Our withholding of the writ as inappropriate on the present record does not rule out possible consideration of an appeal or other remedy where abuse through patently unauthorized discovery in view of an appellate mandate becomes so egregious as to threaten agency functioning. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Cf. Dyke v. Gulf Oil Corp.*, 601 F.2d 557 (Em.App.1979).