**PROSPER ENERGY CORPORATION, Plaintiff,**

v.

**DEPARTMENT OF ENERGY and Charles Duncan, Secretary of Energy, Defendants.**

**Ray L. HUNT, Independent Executor of the Estate of H.L. Hunt, Plaintiff,**

v.

**DEPARTMENT OF ENERGY, Charles Duncan, Secretary of Energy, Defendants.**

**EXXON CORPORATION, Plaintiff,**

v.

**DEPARTMENT OF ENERGY, Charles Duncan, Secretary of Energy, Defendants.**

Civ. A. No. CA–3–78–0244–W.

United States District Court, N.D. Texas, Dallas Division.

Oct. 12, 1982.

Barbara Allen Babcock, Mellie H. Nelson, Asst. Attys. Gen., Civ. Div., Washington, D.C., Charles D. Cabaniss, Asst. U.S. Atty., Dallas, Tex., Frank W. Krogh, Bayle Weiner, U.S. Dept. of Energy, Washington, D.C., for defendants.

Stuart Fryer, Atty. Gen. of Texas, Energy Div., Austin, Tex., for intervenor.

David J. Beck, Fulbright & Jaworski, Houston, Tex., A.B. Conant, Jr., Shank, Irwin, Conant, Williamson & Grevelle, Dallas, Tex., John B. McAdams, Fort Worth, Tex., G. Edward Ellison, Vinson & Elkins, D.L. Collins, Continental Oil Co., Houston, Tex., Michael Lowenberg, Akin, Gump, Hauer & Feld, Dallas, Tex., for plaintiffs.

## MEMORANDUM OPINION

WOODWARD, Chief Judge.

Plaintiffs in these cases,[1] now consolidated under case number CA–3–78–0244–W, seek a declaratory judgment declaring invalid the Department of Energy's (DOE's) stripper well regulation to the extent that it excludes injection and shut-in wells from the well count in determining eligibility for stripper well classification. By Order dated June 29, 1979 the Judicial Panel on Multidistrict Litigation (JPMDL) transferred these consolidated cases to the United States District Court for the District of Kansas for consolidation with similar actions for the purpose of conducting pretrial proceedings. By Order of July 8, 1980 the JPMDL remanded that portion of these cases which concerned the validity of the stripper well regulations, as interpreted to exclude shut-in wells from the well count, to this Court. At the conclusion of pretrial proceedings, the remaining issue in the cases regarding the validity of the regulation, as it excluded injection wells, was also remanded to this Court. This Court announced on January 21, 1981 that it would hold these cases in abeyance pending the outcome of the litigation in the District Court for the District of Kansas. The District Court issued its opinion on July 14, 1981. *In re Department of Energy Stripper Well Exemption,* 520 F.Supp. 1232 (D.Kan. 1981). The Temporary Emergency Court of Appeals has heard the case, reversed the holding of the District Court, denied motions for rehearing and rehearing *en banc,* and issued its Mandate. (September 17, 1982). *In re the Department of Energy Stripper Well Exemption Litigation (Energy Reserves II),* 690 F.2d 1375, (Em.App. 1982), motion for rehearing and rehearing *en banc* denied September 15, 1982, and motion for stay of the Mandate denied September 17, 1982.

These lawsuits involve challenges to the Department of Energy's stripper well regulation, as interpreted by Ruling 1974–29. That Ruling has been upheld by the courts against both procedural challenge[2] and substantive challenge.[3] Plaintiffs now seek to attack the regulation itself. (Plaintiffs' Response to Defendants' Motion for Summary Judgment, p. 5).

The statutory and regulatory history of the Department of Energy's stripper well regulations is a long and convoluted one.[4]

---

1. In addition to the named plaintiffs, the State of Texas intervened as a plaintiff in the consolidated action on July 12, 1979.

2. Ruling 1974–29 is clearly interpretative and exempted from the requirements of § 553(b) of the Administrative Procedure Act. *Energy Reserves Group, Inc. v. Department of Energy (Energy Reserves I),* 589 F.2d 1082, 1091–92 (Em.App.1978).

3. *Energy Reserves I,* 589 F.2d at 1101; *Wiggins Bros. Inc. v. Department of Energy,* 667 F.2d 77, 89 (Em.App.1981); *In re the Department of Energy Stripper Well Exemption Litigation (Energy Reserves II),* 690 F.2d 1375, (Em.App. 1982). *See also Duncan v. Theis,* 613 F.2d 305 (Em.App.1979).

4. The Court of Appeals opinion in *Energy Reserves II* contains a thorough discussion of these matters at 10–16. The discussion contained in this memorandum is limited to only those matters necessary to the resolution of the issues before this court.

Section 4(e)(2) of the Emergency Petroleum Allocation Act of 1973 (EPAA), Pub.L. No. 93–159, 87 Stat. 627, 15 U.S.C. §§ 751 *et seq.*, created an exemption from price regulations for first sales of domestic crude oil produced on stripper well properties (*i.e.*, leases whose average daily production of crude oil for the preceding calendar year does not exceed ten barrels per well).[5] Pursuant to section 4(e)(2)(C) of the EPAA, the President delegated his authority to promulgate and publish regulations implementing the EPAA to the Administrator of the Federal Energy Office. Executive Order 11748, 38 Fed.Reg. 33575 (December 6, 1973). In December of 1973 the Federal Energy Office (FEO) initiated informal rule making procedures under section 553(b) of the Administrative Procedure Act (5 U.S.C. § 553(b)). 38 Fed.Reg. 34414 (December 13, 1973). Shortly thereafter, final regulations were issued, 39 Fed.Reg. 755 (January 2, 1974), and codified at 10 C.F.R. § 210.32. 39 Fed.Reg. 35510 (October 1, 1974).

As noted by the Court of Appeals in *In re the Department of Energy Stripper Well Exemption Litigation (Energy Reserves II)*, 690 F.2d 1375 (Em.App.1982), controversy soon arose over whether the term "well," as used in the regulations, included injection wells, shut-in wells, spent wells, etc.[6] To resolve this problem, the Federal Energy Administration (FEA) issued Ruling 1974–29, which *expressly* excludes such wells from the calculation of average daily production in determining the applicability of the stripper well exemption from the price control program.[7]

---

5. EPAA § 4(e)(2), in complete form, provided as follows:

> (2)(A) The regulation promulgated under subsection (a) of this section shall not apply to the first sale of crude oil produced in the United States from any lease whose average daily production of crude oil for the preceding calendar year does not exceed ten barrels per well.
>
> (B) To qualify for the exemption under this paragraph, a lease must be operating at the maximum feasible rate of production and in accord with recognized conservation practices.
>
> (C) Any agency designated by the President under section 5(b) for such purpose is authorized to conduct inspections to insure compliance with this paragraph and shall promulgate and cause to be published regulations implementing the provisions of this paragraph.

6. The oil industry favors inclusion of these types of wells in the stripper well exemption's "well count". Inclusion of such wells in the calculation of average daily production would enable a producer to divide his total production from a property by a greater number of wells, thereby allowing more production to qualify for the exemption by falling under ten barrels per day per well. *Energy Reserves II*, 690 F.2d 1382 n. 5.

7. Ruling 1974–29 appears at 39 Fed.Reg. 44414 (December 24, 1974) and in relevant part provides as follows:

> *Issue.* Is an "injection" well a "well" for the purpose of determining whether the average daily production of a property was 10 barrels or less per well in the preceding calendar year, for purposes of the stripper well lease exemption of 10 CFR 210.32?
>
> *Ruling.* No. Under the FEA regulations, the first sale of domestic crude petroleum and petroleum condensates, including natural gas liquids, produced from any stripper well lease, is exempt from the mandatory price and allocation regulations. A stripper well lease is defined as a property whose average daily production did not exceed 10 barrels per day per well during the preceding calendar year. "Average daily production" is further defined in 10 CFR 210.32(b) as:
>
> The qualified maximum total production of domestic crude petroleum and petroleum condensates, including natural gas liquids, produced from a property during the preceding calendar year, divided by a number equal to the number of days in that year times the number of wells which produce crude petroleum and petroleum condensates, including natural gas liquids, from that property in that year.
>
> Thus, the FEA regulations by their specific language provide that only wells "which produce crude petroleum" are to be counted in calculating average daily production for the purpose of determining whether the stripper well lease exemption applies. While injection techniques help to "produce" crude petroleum, they are not wells which themselves "produce" crude petroleum. Therefore, wells which did not actually yield or produce crude petroleum during the preceding calendar year are not production wells for this purpose. *Whether the non-producing well was an "injection" well, a disposal well, a dry well, a spent well or a shut-in well will not change this result.* (emphasis added)

Ruling 1974–29 was attacked initially on the ground that it was promulgated without satisfying the rule making requirements of the Administrative Procedure Act (APA). In *Energy Reserves Group, Inc. v. Federal Energy Administration,* 447 F.Supp. 1135 (D.Kan.1978), the district court invalidated the Ruling on this ground. On appeal, the Court of Appeals reversed, holding that the Ruling was interpretative and exempted from the procedural requirements of the APA. *Energy Reserves Group, Inc. v. Department of Energy (Energy Reserves, I),* 589 F.2d 1082 (Em.App. 1978). In the course of ruling on this procedural challenge, the Court of Appeals suggested that Ruling 1974–29 was also substantially valid. 589 F.2d at 1098. In a later opinion, in which the Court of Appeals clarified its holding in *Energy Reserves I,* the court pointed out again its view that Ruling 1974–29 was "a reasonable interpretation of the term 'average daily production' as used in § 406 of TAPAA, § 4(e)(2)(A) of the EPAA, and in 10 C.F.R. § 210.32(b) ...." *Duncan v. Theis,* 613 F.2d 305, 308 n. 4. (Em.App.1979). In a case dealing with the Department of Energy's Marginal Property Rule, a regulation analogous to the stripper well exemption regulation, the Court of Appeals stated "the prior decisions construing the interpretative stripper well Ruling 1974–29 to be consistent with a similar underlying statute are decisive." *Wiggins Bros., Inc. v. Department of Energy,* 667 F.2d 77, 89 (Em.App. 1981) (citations to *Energy Reserves I* and *Duncan v. Theis* omitted). Finally, in *Energy Reserves II* the Court of Appeals concluded as follows:

In summary, we find:

1) The legislative history of the stripper well exemption amply supports the DOE's position that injection wells were not intended by Congress to be included in the well count;

2) Ruling 1974–29 is not beyond the authority of the DOE granted by the controlling statutory provisions;

3) Our prior decision in *Energy Reserves I, Duncan v. Theis* and *Wiggins* have correctly decided that Ruling

1974–29 is a reasonable interpretation of the applicable statutes and regulations; and

4) The stripper well regulations, as interpreted by Ruling 1974–29, are neither arbitrary nor capricious.

For all these reasons, the decision of the district court is reversed, and these consolidated cases are remanded to the district court with instructions to enter judgment for the defendants-appellants. *Energy Reserves II,* 690 F.2d at 1392.

Plaintiffs in this suit seek a judgment declaring invalid the stripper well regulation "to the extent that the regulation excludes injection and shut-in wells from the well count in determining eligibility for stripper well classification." (Plaintiffs' Response pp. 1–2). Defendants contend that this court is foreclosed from making such a declaration by the conclusions of the Court of Appeals in *Energy Reserves II* and have moved for summary judgment. Plaintiffs have responded by arguing that the following issues are not foreclosed by the opinion of the Court of Appeals in *Energy Reserves II:* (1) whether DOE had statutory authority to exclude injection and shut-in wells from the well count under the stripper well regulation; and (2) whether DOE's interpretation of the stripper well regulation to exclude injection and shut-in wells was arbitrary and capricious. (Plaintiffs' Response pp. 10–18). In view of the frequency of remands of litigation in this area, this court wishes to state its belief that the following discussion disposes of any and all issues, save that of remedy, presently before this court in these cases.

## STATUTORY AUTHORITY ISSUE

The Department of Energy (DOE) clearly had the statutory authority to issue its stripper well exemption regulation. Section 4(e)(2)(C) of the EPAA gives a properly designated agency the authority to promulgate regulations implementing the statutory stripper well exemption. Plaintiffs have not alleged that there was anything im-

proper in the chain of delegation from the President to the FEA with regard to this regulation.

■ Where the empowering provision of a statute gives an agency general authority to issue regulations implementing that statute, a regulation promulgated thereunder will be sustained "so long as it is 'reasonably related to the purposes of the enabling legislation.'" *Mourning v. Family Publications Services, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973). As pointed out by the Court of Appeals in *Energy Reserves II,* when the Congress enacted the stripper well exemption it intended that the regulations implementing the exemption "provide appropriate limitations and provisions in the definition of 'lease' to insure that an administratively workable system is established *which does not permit abuse." Energy Reserves II,* 690 F.2d at 1387 (emphasis added). "The legislative history of the stripper well exemption amply supports the DOE's position that injection wells were not intended by Congress to be included in the well count." *Id.* at 1392. The plaintiffs have made no effort to attempt to distinguish shut-in wells from injection wells and the legislative history of the stripper well exemption belies the notion that Congress ever intended such a distinction. "Ruling 1974–29 is not beyond the authority of the DOE granted by the controlling statutory provisions." *Id.*

■ Therefore, this court finds that the DOE was well within its statutory authority when it promulgated the stripper well regulation, as interpreted by Ruling 1974–29.

### ARBITRARY AND CAPRICIOUS ISSUE

■ The Court of Appeals has now held on at least four separate occasions that Ruling 1974–29 is a reasonable interpretation of the applicable statutes and regulations. *Id.* at 1392. In its most recent case, it also *expressly* held that *the stripper well regulations themselves,* as interpreted by Ruling 1974–29, are neither arbitrary nor capricious. *Id.* Plaintiffs contend that the latter holding is not supported by the opinion of the Court of Appeals in *Energy Reserves II.* (Tr. 66–69, Hearing September 8, 1982). This contention was raised by the plaintiffs in their motions for rehearing and rehearing *en banc* before the Court of Appeals and was rejected by that court. Furthermore, the Court of Appeals in *Energy Reserves II* has remanded that case to the district court with instructions that *a judgment* be entered in favor of the defendants-appellants. *Energy Reserves II,* at 1392. In such circumstances, this court must assume that the Court of Appeals meant to dispose of *all* of the issues involved in *Energy Reserves II,* including whether the stripper well regulation itself was arbitrary or capricious. The plain meaning of the language in *Energy Reserves II* can afford no other interpretation.

### OTHER REMAINING ISSUES

Plaintiffs have alleged that there are numerous factual issues still before this court which preclude it from granting defendants' motion for summary judgment. These "factual issues," plaintiffs contend, include the following:

"1. What part injection and shut-in wells play in secondary recovery techniques for the production of crude petroleum.

2. Whether the use of injection and shut-in wells in secondary recovery techniques contributes to a property's economic life, thus maintaining production and recoverable reserves.

\*   \*   \*   \*   \*   \*

5. The extent to which the supply of domestic crude oil would be decreased by excluding injection and shut-in wells from the well count for purposes of the stripper well regulation." (Plaintiffs' Response pp. 11–12).

■ The only issues left for resolution by this court were those previously discussed. Whether an action by an administrative agency is either outside its statutory

authority or arbitrary and capricious are purely legal issues.[8] The "fact issues" that plaintiffs allege are still before this court are not justiciable issues in the context in which they are presented. Rather, they are considerations best left to the judgment of legislators and rule making authorities.[9] It is not within the province of this court to re-write administrative regulations based upon economic or other policy considerations. *FCC v. National Citizens Committee for Broadcasting,* 436 U.S. 775, 792–93 n. 15, 98 S.Ct. 2096, 2110–11 n. 15, 56 L.Ed.2d 697 (1978); *Addison v. Holly Hill Fruit Products, Inc.,* 322 U.S. 607, 619, 64 S.Ct. 1215, 1222, 88 L.Ed. 1488 (1944); *McCulloch Gas Processing v. Dept. of Energy,* 650 F.2d 1216, 1229–30 (Em.App.1981).

Therefore, the defendants' motion for summary judgment in this consolidated lawsuit is granted. While this decision disposes of the substantive issues presented, it does not dispose of the issue of what remedy is to be afforded the parties in these cases. More specifically, it does not dispose of the fate of the funds currently in escrow. The remaining issues of remedy will be dealt with by this court pursuant to the briefing schedule previously issued.

---

8. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), and *Bowman Transportation v. Arkansas-Best Freight System,* 419 U.S. 281, 285-86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). *See also Standard Oil Co. v. Department of Energy,* 596 F.2d 1029, 1039 (Em. App.1978).

9. The remarks of the Court of Appeals in *Energy Reserves II* are equally applicable here: "We are not the legislative body responsible for this nation's energy policies. The wisdom or lack thereof of Ruling 1974–29 is properly left with the Congress. Our review is a narrow one and we will not unnecessarily and improperly intrude upon the public policy decisions made by the other branches of Government." *Energy Reserves II,* 690 F.2d 1392.