In re the DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION.

ORYX ENERGY COMPANY (Successor to Sun Oil Company (Delaware)), Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF ENERGY, Defendant-Appellee.

No. 10-87.

Temporary Emergency Court of Appeals.

Argued April 17, 1991.

Decided July 11, 1991.

James Baller and Mary Ann Hammett, Baller & Hammett, Washington, D.C., with whom James W. Sargent, Wichita, Kan., and C.L. Carpenter, Oryx Energy Company, Dallas, Tex., were on the brief, for plaintiff-appellant.

Edward P. Levy, Don W. Crockett, and Paul T. Michael, Judicial Litigation Div., Economic Regulatory Admin., U.S. Dept. of Energy, Washington, D.C., were on the brief, for defendant-appellee.

Before GRANT, METZNER and PECK, JJ.

JOHN W. PECK, Judge.

In 1979, Sun Oil Company procured an injunction against the enforcement of a Department of Energy (DOE) ruling regarding the regulation of oil prices under the Economic Stabilization Act. Sun ultimately lost its challenge to the DOE ruling, and the district court ordered it to pay prejudgment interest on the resulting overcharges at DOE internal policy rates and to pay interest on amounts that were improperly withheld from the escrow account securing the injunction. Sun appeals these orders. For the reasons that follow, we affirm.

## I. BACKGROUND

This case arose when several oil companies sought to enjoin enforcement of DOE Ruling 1974–29, which advised that injection wells could not be included as wells for determining whether property qualified for the stripper well exemption. The stripper well exemption relieved "stripper well leases" of compliance with allocation and price regulations. Stripper well leases were defined as properties whose average daily production did not exceed 10 barrels per day per well during the preceding calendar year. A federal regulation defined "average daily production" as total production divided by "the number of wells which produce crude petroleum and petroleum condensates." Injection wells are not wells which produce petroleum. Instead, they contribute to production by providing a conduit through which fluids can be injected into an oil reservoir to maintain reservoir pressure, thereby increasing the output of production wells. Ruling 1974–29 concluded that because injection wells are not oil producing wells, they should not be included in the stripper well exemption calculation.

The district court enjoined enforcement of this ruling, holding that it was legislative in nature and therefore subject to the notice and comment provisions of the Administrative Procedure Act. A condition of the district court injunction was that Sun place the disputed charges into a court escrow account. The DOE appealed, and this court held that the ruling did not violate the Administrative Procedure Act, but left the injunction undisturbed, and remanded for further proceedings. *Energy Reserves Group, Inc. v. Dept. of Energy,* 589 F.2d 1082, 1091 (TECA 1978). The DOE then petitioned this court for a writ of mandamus to compel the district court to enforce the ruling, but we denied the petition because of the extraordinary nature of the writ. *Duncan v. Theis,* 613 F.2d 305 (TECA 1979). However, when the district court again held the ruling invalid, this time on the basis that it was an arbitrary and capricious exercise of administrative authority, this court reversed and expressly held that the ruling was valid. *Energy Reserves Group, Inc. v. Dept. of Energy* [*Energy Reserves II*], 690 F.2d 1375 (TECA 1982).

After our decision in *Energy Reserves II* became final, the oil companies entered into a settlement agreement with the DOE re-

garding how the escrow account and other monies owed by the companies were to be distributed. However, in addition to the funds disposed of through the settlement agreement, the district court ordered Sun to pay pre-judgment interest on the escrowed overcharges at DOE internal policy rates. Furthermore, the court ordered Sun to pay interest at DOE rates on amounts that were not timely deposited into the escrow. These deficiencies resulted from Sun's practice of reducing its escrow deposits by the amount of severance taxes paid to the states on the excess revenues, a practice which has since been expressly rejected by this court in *Citronelle–Mobile Gathering, Inc. v. Herrington,* 826 F.2d 16, 28 (TECA 1987). Sun appeals the interest orders.

## II. DISCUSSION

■ First, Sun asserts that the DOE should be estopped from seeking interest for the periods during which the taxes were withheld from the escrow account because this issue was resolved through a consent decree. Sun asserts that its transmittals to the escrow fund made clear that it was remitting the overcharges net of state severance taxes paid on the overcharges. During the escrow period, the DOE audited Sun for compliance with federal price and allocation regulations, and the parties entered into a consent decree that "resolved and extinguished" all DOE claims except the injection well issue and one other unrelated claim. Consequently, Sun asserts that the issue of the amount of its deposits was resolved by the consent decree and therefore the DOE should have been estopped from raising the issue before the district court.

This argument has no merit. The stripper well litigation was specifically excluded from the matters resolved by the consent decree. Disputes regarding the adequacy or timing of escrow deposits relating to that litigation clearly fall within that express exclusion and therefore are outside the scope of the consent decree. Furthermore, none of the audit categories referred to in the consent decree involved the escrow account or determining the amount of overcharge liabilities. Therefore, there is no basis for finding that the DOE audit certified Sun's escrow practices.

■ Sun also contends that even if interest were appropriate on the taxes not deposited, it should have been charged at the escrow rate, not at the DOE policy rate. Sun acknowledges that this court has previously approved the use of DOE policy rates in overcharge cases. However, the company argues that these cases involved enforcement actions against wrongdoers, and that a different result should obtain in this case, where there existed a good faith dispute regarding the proper application of the stripper well exemption statute.

We disagree. This court has repeatedly held that the interest rate found in the DOE rate schedule is ordinarily the appropriate rate to be applied to overcharges in the absence of a compelling reason to apply a different rate. *Lea Exploration, Inc. v. Dept. of Energy,* 843 F.2d 510, 515 (TECA 1988); *Citronelle–Mobile Gathering, Inc. v. Herrington,* 826 F.2d 16, 28 (TECA 1987); *United States v. Exxon,* 773 F.2d 1240, 1273 (TECA 1985). Sun's good faith is simply not a compelling reason. As we stated in *Herrington,* "a finding of good faith that would relieve a wrongdoer from civil penalties is not equivalent to a finding that [he] should not be required to make restitution." 826 F.2d at 28. Moreover, "restitution should disgorge unjust enrichment and restore the status quo." Id. at 30. Because our previous cases establish that the DOE rates bear a reasonable relation to the value of the funds improperly retained, we agree with the district court that those rates were properly applied to the deficiency created by Sun's failure to remit the full amount of the excess revenues on a timely basis.

Finally, Sun also appeals the use of the DOE rates for pre-judgment interest. This was the subject of the appeal in *Chevron U.S.A., Inc. v. Department of Energy,* 944

F.2d 914 (TECA 1991), argued on the same day as the instant appeal. For reasons fully discussed in that opinion, also released today, we hold that the DOE rates were the proper rates for calculating pre-judgment interest, and we therefore affirm the district court's award.

## III. CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.